IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GILBERTO CHAVARRIA GONZALEZ, | § | |
| TDCJ #1249386, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-2523 |
| | § | |
| SHANTA CRAWFORD, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

State inmate Gilberto Chavarria Gonzalez (TDCJ #1249386, former TDCJ #913347) has filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights in connection with the conditions of his confinement.[1] Gonzalez proceeds *pro se* and he has been granted leave to proceed *in forma pauperis*. After screening all of the pleadings as required pursuant to 28 U.S.C. § 1915A, the Court requested an answer from several of the defendants. The defendants have filed a joint motion for summary judgment [Doc. # 20]. Gonzalez has filed a response [Doc. # 21]. After reviewing all of the pleadings, the summary judgment record, and the applicable law, the Court grants the defendants' motion and dismisses this case for reasons that follow.

---

[1] The plaintiff indicates in the complaint that his surname is "Gonzales." [Doc. # 1]. The record reflects, however, that the correct spelling is "Gonzalez." To avoid any potential confusion, the Court will refer to the plaintiff by the name that appears in official prison records as "Gilberto Chavarria Gonzalez" or simply as "Gonzalez."

## I.    BACKGROUND

Gonzalez is presently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ") at the Ellis Unit in Huntsville. Gonzalez sues five individual defendants employed by TDCJ at the Ellis Unit facility, including Practice Manager Shanta Crawford, Registered Nurse Kathy Hawkins, Dr. Betty Williams, Captain Michael Barnett, and Captain Dianna Fields. The allegations against these defendants, which primarily concern classification decisions about Gonzalez' ability to perform work following a shoulder injury, are described briefly below.

Gonzalez claims that he "broke" his left clavicle as the result of an altercation with another inmate on or about May 1, 2008.[2] The record reflects that, later that same day, Gonzalez was examined by a nurse and a physician's assistant in the prison medical department. It was determined that Gonzalez had a dislocated clavicle or collar bone at the shoulder. Gonzalez was given a sling, pain medication (Tylenol #3), and a referral to see an orthopedic specialist. Gonzalez was not assigned to work at this time.

On May 29, 2008, Gonzalez was examined by an orthopedic specialist (Dr. Stanley Allen) at the University of Texas Medical Branch ("UTMB") Hospital in Galveston. The specialist diagnosed an Acromioclavicular Separation (*i.e.*, a clavicle or collar bone that had separated from the shoulder), but no fracture. Initially, Gonzalez was scheduled for surgery

---

[2]  The "clavicle" or "clavicula" is "a bone, curved like the letter *f*, that articulates [or conjoins] with the sternum and the scapula, forming the anterior portion of the shoulder girdle on either side[.]" DORLAND'S MEDICAL DICTIONARY 376 (31st ed. 2007). A clavicle is also known as a "collar bone." *Id.*

2

to repair his separated shoulder on June 24, 2008, but the procedure was re-scheduled by UTMB. During the meantime, Dr. Williams renewed Gonzalez' prescription for pain medication and scheduled another appointment for him at the UTMB Hospital in Galveston. Dr. Williams also revised Gonzalez' "Health Summary for Classification" or "HSM-18 form" to reflect that he was "medically unassigned" for purposes of performing any work.[3]

During a follow-up examination at the UTMB Hospital on August 21, 2008, Gonzalez denied having any pain in his shoulder. The treating physician released Gonzalez from having to wear a sling, but kept him on the schedule for surgery. On September 8, 2008, Gonzalez requested and received a renewed prescription for pain medication (Ibuprofen). On September 12, 2008, Hurricane Ike caused major damage to Galveston and the UTMB Hospital was forced to close. As a result, Gonzalez' surgery was postponed. Although he was cleared to work, Gonzalez was not assigned to a particular job during this time. On October 3, 2008, a physician's assistant revised Gonzalez' classification records so that Gonzalez would remain medically unassigned for purposes of work.

Gonzalez returned to the UTMB Hospital for an evaluation on December 4, 2008. On December 16, 2008, he underwent surgery to repair his separated shoulder. Following the

---

[3] The defendants have provided the relevant HSM-18 forms that pertain to Gonzalez' complaint. [Doc. # 20, Exhibit A]. The defendants explain that "medically unassigned" is category that appears on the form, which lists numerous restrictions that may limit a prisoner's ability to work. [Doc. # 20, at 2, n. 1]. A prisoner who is medically unassigned is restricted from performing any work for medical reasons. [*Id.*]. According to an affidavit from a supervisory official, the health-related restrictions on a prisoner's classification may be imposed only by a physician or a "mid-level licensed practitioner" such as a nurse practitioner or a physician's assistant." [Doc. # 20, Exhibit C, Affidavit of Mary Gotcher].

surgery, Gonzalez was instructed to wear a sling at all times and he was released from daily duties for six weeks. Gonzalez was prescribed pain medication (Tylenol #3) for ten days. Gonzalez was given additional pain medication (Ibuprofen) on December 29, 2008.

Following his surgery, Gonzalez remained medically unassigned and did not work through the end of February, 2009. On March 6, 2009, Gonzalez was cleared to work and assigned temporarily to the kitchen. According to the HSM-18 completed by a nurse practitioner, Gonzalez' restrictions prohibited lifting over 25 pounds, climbing, and reaching over the shoulder. Gonzalez claims that he asked Nurse Hawkins to extend his medically unassigned status, but she refused. On March 11, 2009, Captain Fields reportedly asked Gonzalez to wash pots and pans in the kitchen. Pointing to his surgically repaired shoulder, Gonzalez complained that he was in pain and still unable to work. Captain Fields relented and gave Gonzalez an extra week of no work duty in which to resolve whether he was entitled to maintain his medically unassigned status.

Gonzalez contacted the orthopedic specialist who examined him previously at the UTMB Hospital (Dr. Stanley Allen). The specialist examined Gonzalez on March 26, 2009, and observed that the surgically repaired shoulder was doing well. The specialist recommended, however, that Gonzalez remain medically unassigned for three more weeks. Shortly thereafter, on March 30, 2009, a physician's assistant revised Gonzalez' HSM-18 form to reflect that he was medically unassigned and therefore unable to work. During this time, Gonzalez claims that he worked in the kitchen scrubbing pots, pans, and floors for 5

days until he complained to Captain Fields. After consulting the revised HSM-18 form, Captain Fields verified that he was medically unassigned and escorted him from the kitchen.

Gonzalez remained medically unassigned until he was cleared to work as a "counter attendant" in the kitchen on June 24, 2009. The HSM-18 form that authorized his return to work included restrictions that prohibited lifting over 25 pounds, climbing, and reaching over the shoulder. On June 28, 2009, Gonzalez reportedly complained to Captain Barnett that the work assignment aggravated his shoulder. On July 7, 2009, Gonzalez submitted a Step 1 grievance asking to be medically unassigned because he shoulder was "broke again" and he was in pain. Gonzalez was seen in the clinic the following day on July 8, 2009, and his HSM-18 was changed, reinstating his medically unassigned status for 90 days. Thereafter, on July 31, 2009, Gonzalez was examined by a physician at the Ellis Unit (Dr. Bob Jones), who noted that Gonzalez had good range of motion in his left shoulder. Dr. Jones agreed, however, that Gonzalez should remain medically unassigned and entered that assessment on an HSM-18 form dated August 3, 2009.

The civil rights complaint filed by Gonzalez in this case is dated August 5, 2009. In that complaint, Gonzalez contends that Crawford, Nurse Hawkins, and Dr. Williams failed to ensure that he was classified as medically unassigned for an appropriate length of time. As a result, Gonzalez complains that Captain Fields and Captain Barnett assigned him to perform work that exceeded his physical ability and caused him to re-injure his surgically repaired shoulder. Gonzalez complains that these defendants acted with deliberate indifference to a serious medical need in violation of the Eighth Amendment to the United

States Constitution. Gonzalez seeks $40,000 in compensatory damages from each defendant for his pain and suffering.

The defendants have filed a joint motion for summary judgment, noting that Gonzalez failed to exhaust available administrative remedies before filing his complaint in federal court. The defendants argue, therefore, that the complaint must be dismissed because it is barred by the mandatory exhaustion requirement found in the Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e(a). Alternatively, the defendants maintain that the complaint fails as a matter of law for other reasons because they are entitled to immunity from Gonzalez' claims against them in their official and individual or personal capacity. The parties' contentions are discussed further below under the governing standard of review.

## II.    STANDARD OF REVIEW

The defendants' motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The moving party has the burden of showing that summary judgment is appropriate. *See Martco Ltd. Partnership v. Wellons, Inc.*, 588 F.3d 864, 871 (5th Cir. 2009) (citing *Celotex*, 477 U.S. at 323). Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *Celotex Corp.*, 477 U.S. at 322-23.

If the moving party meets its initial burden, "[t]he nonmoving party 'must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim.'" *Peterson v. City of Forth Worth, Tex.*, 588 F.3d 838, 844 (5th Cir. 2009) (quotation omitted). "The identified evidence 'must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial.'" *Id.* The non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citation and quotations omitted).

In deciding whether a genuine fact issue exists, a reviewing court must consider "all disputed facts and inferences in the light most favorable to the non-movant." *Hill v. Carroll County, Miss.*, 587 F.3d 230, 233 (5th Cir. 2009) (citing *Matsushita Elec. Indus. Co.*, 478 U.S. at 587). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *Diamond Offshore Co. v. A&B*

*Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, a reviewing court will not assume "that the non-moving party could or would prove the necessary facts,' and will grant summary judgment 'in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075) (emphasis in original).

The Court acknowledges that the plaintiff proceeds *pro se* in this instance and that his pleadings are subject to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)). Nevertheless, it is well established that "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## III.     DISCUSSION

At the outset, the defendants argue that the complaint must be dismissed because Gonzalez failed to exhaust available administrative remedies as required by the PLRA. Under the PLRA, an inmate is required to exhaust administrative remedies for all "action[s] . . . brought with respect to prison conditions" before filing a civil rights suit in federal court under 42 U.S.C. § 1983 or "any other Federal law."  42 U.S.C. § 1997e(a).  The Supreme Court has repeatedly emphasized that § 1997e(a) mandates exhaustion of *all* administrative procedures before an inmate can file any suit challenging prison conditions.  *See Booth v. Churner*, 532 U.S. 731, 739 (2001); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *see also Jones v. Bock*, 549 U.S. 199, 212 (2007) (confirming that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Fifth Circuit has acknowledged that "[q]uibbles about the nature of a prisoner's complaint, type of remedy sought, and the sufficiency or breadth of prison grievance procedures" have been foreclosed by Supreme Court precedent on the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a).  *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) (citing *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001)).  Thus, the Fifth Circuit has consistently mandated that a prisoner must exhaust his administrative remedies by complying with applicable grievance procedures before filing a federal civil

rights lawsuit related to prison conditions. *See, e.g. Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

It is well established that TDCJ has a formal two-step administrative grievance process. *See Johnson*, 385 F.3d at 515; *see also Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step 1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable). A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. *See Johnson*, 385 F.3d at 515. Once an inmate receives a response to his Step 1 grievance, he then has up to ten days to file a Step 2 grievance to appeal an unfavorable result. *See id*. Step 2 grievances are reviewed at the state level. *See id*. A Texas prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement. *See id*. (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

Gonzalez provided a copy of his Step 1 grievance along with the complaint. In that grievance, which he submitted to prison officials on July 7, 2009, Gonzalez complains only that he wrote to Captain Barnett on June 28, 2009, asking to be medically unassigned, but that he was still working in the kitchen as of July 6, 2009. [Doc. # 1, Step 1 Grievance #20091863338]. The grievance does not mention any of the other defendants by name and it does not reference any of the other allegations raised in the complaint. Gonzalez concedes in his more definite statement that he did not file any other Step 1 grievance concerning the claims in his complaint. [Doc. # 8, at ¶¶ 18-19]. More importantly, Gonzalez concedes that

he did not complete the administrative remedy process by filing a Step 2 grievance. [*Id.*]. Gonzalez has filed a response to the summary judgment motion. Gonzalez does not dispute, however, that he failed to comply with prison procedural rules by completing the grievance process with respect to his claims.

The Supreme Court has emphasized that the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), mandates "proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006), which demands compliance with prison procedural rules. Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules. *See id*. As the Fifth Circuit has observed, "TDCJ has promulgated a detailed, complex, and carefully thought-out program to facilitate the filing of grievances and assure their prompt, dispassionate investigation." *Wright*, 260 F.3d at 358. By failing to complete the grievance process, Gonzalez deliberately bypassed this avenue of administrative review.

The Fifth Circuit has taken a "strict approach" to the exhaustion requirement found in 42 U.S.C. § 1997e(a), emphasizing that "'substantial compliance' with administrative remedy procedures" is not sufficient to satisfy the PLRA. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) (quotation and citations omitted). The defendants have met their burden to show Gonzalez did not exhaust available remedy procedures and that they are entitled to summary judgment on the defense of exhaustion. Because it is undisputed that Gonzalez failed to satisfy this mandatory requirement, his complaint is subject to dismissal for failure to state a claim in compliance with 42 U.S.C. § 1997e(a) and the Court need not consider the

merits of his complaint or the defendants' alternative arguments on the defenses of official and qualified immunity.

## IV.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. The motion for summary judgment (Doc. # 20) is **GRANTED**

2. The complaint is **DISMISSED**, with prejudice, for failure of the plaintiff to comply with 42 U.S.C. § 1997e(a) by exhausting all available administrative remedies.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED in Houston, Texas, on 28th of May, 2010.

*[signature: Nancy F. Atlas]*

Nancy F. Atlas
United States District Judge